586 So.2d 1185 (1991)
Michael D. LEE, Petitioner,
v.
FLORIDA DEPARTMENT OF INSURANCE AND TREASURER, Respondent.
No. 90-3831.
District Court of Appeal of Florida, First District.
September 11, 1991.
Rehearing Denied October 14, 1991.
*1186 Thomas M. Ervin, Jr., and Melissa Fletcher Allaman, Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, and Edward A. White, Jacksonville, for petitioner.
S. Marc Herskovitz, Div. of Legal Services, Florida Dept. of Ins., Tallahassee, and L. William Porter, II, Tallahassee, for respondent.
ZEHMER, Judge.
Michael D. Lee invokes the jurisdiction of this court to review a nonfinal order entered in this administrative disciplinary proceeding against him by the Department of Insurance. The petition seeks review of a *1187 hearing officer's order that denied disqualification of the Department's attorney, L. William Porter II, to represent the Department in these proceedings. Because it appears that review of the final agency decision would not provide an adequate remedy, we accept jurisdiction pursuant to section 120.68(1), Florida Statutes (1989), and rule 9.100, Florida Rules of Appellate Procedure. For the reasons hereafter stated, we quash the appealed order and remand with directions to disqualify Porter from further representation of the Department in these proceedings.
Petitioner Lee holds a license as a general lines insurance agent issued by the Department. This administrative proceeding was initiated by the Department to revoke his license on numerous grounds arising out of transactions and events that were involved in a civil action filed in the United States District Court for the Middle District of Florida by the National Council on Compensation Insurance (NCCI).[1] NCCI made claims for damages against Lee and his business, and Lee counterclaimed for damages against NCCI. Counsel for NCCI in that action included the law offices of Frederick Leo Bateman, Jr. Porter, then a salaried associate with that firm, appeared and signed papers filed in that case. During his participation in the federal court action, Porter allegedly received and gained substantial information and knowledge through his representation of NCCI. The federal court suit was settled pursuant to a written settlement between NCCI, Lee and the other parties to the suit dated February 26, 1990. Attorney Bateman participated in negotiating and reaching this settlement as attorney for NCCI, but he did not sign the agreement. The settlement agreement provided in paragraph 8 that:
Counsel for NCCI Plaintiffs, FREDERICK L. BATEMAN JR., and the Law Offices of Frederick LEO BATEMAN, JR., [sic] will not represent the Department of Insurance, State of Florida, nor participate in any administrative proceedings brought by the Department of Insurance to revoke or suspend the license issued by [sic] the Department of Insurance and Treasurer, State of Florida, to MICHAEL D. LEE as a general lines agent, and NCCI will so instruct and direct its attorney, Frederick L. Bateman, Jr. and the Law Office of Frederick Leo Bateman, Jr. [sic] not to so represent or participate in said administrative proceeding.
Pursuant to the settlement agreement, NCCI was paid the sums as agreed by the parties, and a joint motion to dismiss with prejudice was filed in federal court. An order of dismissal was entered on March 7, 1990.
Attorney Porter terminated his association with Bateman's law office shortly thereafter, on February 28, 1990, and established his own law firm. The Department instituted these disciplinary proceedings on July 9, 1990. On August 31, 1990, Porter having been employed by the Department to represent it in this case, formally appeared in these proceedings as attorney for the Department. Petitioner Lee immediately filed a motion to disqualify Porter from representing the Department based on the provisions of paragraph 8 of the settlement agreement. The Department responded to the hearing officer's order to show cause, and an evidentiary hearing was held before the hearing officer on the matter. In the order denying the motion, the hearing officer found, in addition to the facts recited above, that there were no written or oral agreements between Porter and Bateman restricting Porter's future employment. The specific grounds for denial then recited:
6. The Department argues in its brief that restrictions on employment are against public policy. The Respondent *1188 argues that ethical considerations prevent Mr. Porter from taking any action contrary to the interest of his former client and that his participation would breach the settlement agreement contrary to the client's interest.
7. Restrictions on any attorney's right to practice as part of a partnership or employment agreement, or as a settlement agreement between private parties are prohibited. See, Rule 4-5.6, Rules of Professional Conduct.
Therefore, the motion to disqualify counsel is hereby DENIED.
We hold that the hearing officer erred in ruling that the provision in paragraph 8 of the settlement agreement is prohibited and thus made void by rule 4-5.6 of the Florida Bar's Rules of Professional Conduct.[2]
We first would note that the application of rule 4-5.6 to invalidate or render void a provision in a private contract between two parties is beyond the scope and purpose of the Rules and constitutes error. As the preamble to the Rules states, they "simply provide a framework for the ethical practice of law." The preamble further explains:
Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process... .
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons... . Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.
To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect. Until paragraph 8 of the settlement agreement has been voided, canceled, or nullified by a court of competent jurisdiction, it must be treated as valid and binding on all parties legally affected by its terms.[3] Whether attorney Bateman acted unethically in violation of the Rules by participating in the negotiation of a settlement agreement that included the provisions in paragraph 8 and should be disciplined therefor is not the issue in this proceeding. Rather, the critical issue is whether Porter, as an associate lawyer employed in Bateman's law office who worked on NCCI's case, can be ethically and legally disqualified from representing the Department in respect to the same transactions and events as those in which *1189 he had previously represented NCCI in view of the presumptively valid contractual provision in paragraph 8 between Lee and NCCI.
By the terms of paragraph 8, NCCI agreed to instruct its attorney Bateman and his associate Porter not to participate in any administrative proceeding by the Department to revoke Lee's license. Considered in context with the remainder of the settlement agreement, we can conclude that this agreement was intended to be applicable to any disciplinary proceeding that might arise out of the matters being settled by the parties, including this administrative proceeding.
At the evidentiary hearing on this matter, it was agreed by the Department and the hearing officer that Bateman would be bound by the provisions of paragraph 8 and would be disqualified from representing the Department in these proceedings. We also agree. NCCI had sufficient interest in preserving any confidences and preventing use or disclosure of information that may have been learned or communicated to Bateman and his employees during the handling of the case, and NCCI could insist that Bateman and those employees not participate in any administrative proceeding arising out of those matters as a lawyer representing the Department, or any other party, because that participation might require the use or disclosure of information and confidences obtained during his representation of NCCI.
A lawyer is bound by rule 4-1.6[4] to honor such a request by a current client and by rule 4-1.9[5] as to a former client. Thus, it has been ruled that a lawyer is bound to respect the request of a client or former client not to use or disclose information or confidences learned during that representation, and is forbidden to use such information for the advantage of himself or of a third person. See Campbell v. American Pioneer Savings Bank, 565 So.2d 417 (Fla. 4th DCA 1990); Ford v. Piper Aircraft Corp., 436 So.2d 305 (Fla. 5th DCA 1983), rev. denied, 444 So.2d 417 (Fla. 1984); Buntrock v. Buntrock, 419 So.2d 402 (Fla. 4th DCA 1982). Bateman and his firm's representation of NCCI gave rise to an irrefutable presumption that confidences were disclosed during the relationship. State Farm Mutual Automobile Ins. Co. v. K.A.W., 575 So.2d 630 (Fla. 1991); Ford v. Piper Aircraft Corp., 436 So.2d 305.[6] *1190 The client's restriction on the use or disclosure of such information could very well place Bateman or those in his firm in a conflict of interest position under rule 4-1.7 if and when confronted with the need to use or disclose it in the subsequent representation of another client. In conflict of interest cases, disqualification of the lawyer is appropriate when it is shown that "(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." State Farm Mutual Automobile Ins. Co. v. K.A.W., 575 So.2d at 633. Disqualification is required to avoid the appearance of impropriety.
The hearing officer focused on whether Porter was disqualified to represent the Department by reason of paragraph 8, and although conceding that Bateman was so disqualified by that agreement, nevertheless ruled that Porter was not disqualified by reason of rule 4-5.6. In so ruling, the hearing officer failed to focus on the critical issue, which was not whether Bateman could restrict Porter's practice after he left Bateman's firm, but whether Porter was as disqualified as Bateman by reason of rule 4-1.10.[7] Porter's participation in the representation of NCCI gave him access to the information and confidences arising out of the representation by Bateman and his firm, giving rise to the irrefutable presumption that confidences were disclosed; and this factor made Porter just as disqualified as Bateman.
Furthermore, we do not give the same construction to rule 4-5.6 as did the hearing officer. That Rule, as we construe it, is intended to prevent lawyers from entering into agreements that operate to restrict a lawyer's right to practice generally, for example, in the sense that an attorney agrees as part of a settlement not to represent any persons who may have interests adverse to the client regardless of the events and issues involved; that Rule does not reach agreements with or by the client to preclude the lawyer's representation of other persons with respect to cases that involve the same facts, transactions, and events as does the case settled for the client. Failure to give effect to this distinction would defeat the protections of confidential information provided in rules 4-1.6 and 4-1.9.
The Department contends that Porter's representation of the Department is not sufficiently adverse to the interests of NCCI to give rise to any conflict of interest. However, NCCI's agreement in paragraph 8 to prevent such representation manifests its intent to withhold consent and thereby preclude the use or disclosure of information gained during his representation of NCCI. That fact alone demonstrates sufficient adversity of interests to apply the rules on conflict of interests.
Finally, the Department argues that petitioner Lee has no standing to object to *1191 Porter's representation of the Department because he represented NCCI and did not represent Lee. We conclude otherwise because, as shown by the record, the agreement in paragraph 8 was intended not only for the benefit and protection of NCCI, which continued to have litigation with Lee and others in a circuit court action pending in Broward County after consummation of the settlement agreement, but also for the benefit of Lee as a party to the agreement. Since this provision is assumed to be valid for purposes of this appeal, Lee has standing as the beneficiary of that agreement to seek Porter's disqualification to the extent that Porter's representation is unethical. We see no compelling reason to require Lee to seek Porter's disqualification by way of a specific performance action in circuit court by denying him standing to raise the issue in this administrative action to which he is the principal party.
Finding no merit in the Department's remaining contentions, we quash the order denying the motion to disqualify Porter with directions that he be disqualified from further representation of the Department in these administrative proceedings against Lee.
BOOTH and WOLF, JJ., concur.
NOTES
[1] The case was styled National Council on Compensation Insurance v. Lee & Lee, Inc., case number 87-980-CIV-J-12.
[2] The Rules of Professional Conduct will be referred to hereafter simply as "Rules" or "Rule." Rule 4-5.6 provides:

A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) An agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.
[3] There is no provision in chapter 120 giving the hearing officer in an administrative disciplinary proceeding jurisdiction to cancel or nullify contractual provisions between private parties or to specifically enforce a private contractual provision; only courts of competent jurisdiction have such authority. Accordingly, we do not treat the disposition of the issue here presented as requiring the specific enforcement of paragraph 8 of the settlement agreement. However, we recognize that administrative disciplinary proceedings such as this involve the exercise of quasi-judicial power pursuant to Article V, Section 1, of the Florida Constitution and the statutes regulating the professional involved, and we ascribe to the hearing officer and the agency the same power that courts exercise to disqualify a lawyer from representing a party to the proceeding if that representation would be in violation of law or Rules of Professional Conduct applicable to lawyers. The exercise of that power is subject to judicial review pursuant to section 120.68, Florida Statutes.
[4] Rule 4-1.6 provides in pertinent part:

(a) A lawyer shall not reveal information relating to representation of a client except as stated in paragraphs (b), (c), and (d) unless the client consents after disclosure to the client.
* * * * * *
(c) A lawyer may reveal such information to the extent the lawyer believes necessary:
(1) To serve the client's interest unless it is information the client specifically requires not to be disclosed.
(Emphasis added.) The Comment to the rule states in part:
The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or by law.
The Comment also states: "The duty of confidentiality continues after the client-lawyer relationship has terminated."
[5] Rule 4-1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
[6] For this reason, we reject the Department's argument that it was not shown on the record that "Porter gained no confidential knowledge during his tenure with the Law Office of Frederick Leo Bateman, Jr. that will disadvantage the NCCI."
[7] Rule 4-1.10 provides in part:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
* * * * * *
(c) When a lawyer has terminated any association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) Any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.